UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

------------------------------------X

JAMES JOSEPH,

          Plaintiff,           **MEMORANDUM & ORDER**

  - against -              No. 21-cv-4398 (KAM)

MARTIN O'MALLEY, COMMISSIONER OF
SOCIAL SECURITY,

          Defendant.

------------------------------------X

**KIYO A. MATSUMOTO, United States District Judge:**

Mr. James Joseph appeals the final decision of the Commissioner of the Social Security Administration[1] denying him Disability Insurance Benefits under the Social Security Act, 42 U.S.C. § 423. (ECF No. 1, Compl.) Mr. Joseph has moved for "summary judgment on the pleadings," which the Court will treat as a motion for judgment on the pleadings.[2] (*See* ECF No. 10, Pl.'s Mot.) The Commissioner has also moved for judgment on the pleadings. (ECF

---

[1] The Court has updated the caption to reflect the new Commissioner of Social Security, who took office after Mr. Joseph commenced this action. *See* Fed. R. Civ. P. 25(d); *Pryor v. Berryhill*, 286 F. Supp. 3d 471, 471 n.1 (E.D.N.Y. 2017).
[2] Social Security appeals are generally resolved on motions for judgment on the pleadings because judicial review of Social Security decisions is limited to "the pleadings and transcript of the record[.]" 42 U.S.C. § 405(g); *Kercado ex rel. J.T. v. Astrue*, No. 08-CV-478 (GWG), 2008 WL 5093381, at *2 (S.D.N.Y. Dec. 3, 2008) ("Judicial review of Social Security cases [] is limited to a review based on the pleadings and the administrative 'record.'" (citing § 405(g)). Therefore, this Court considers Mr. Joseph's motion, styled as a motion for summary judgment, under Federal Rule of Civil Procedure 12(c). *See Aguirre v. Saul*, 568 F. Supp. 3d 477, 478-79 (S.D.N.Y. 2021) (treating plaintiff's motion pursuant to § 405(g) as one for judgment on the pleadings, even though plaintiff had "styled his motion as one for summary judgment").

No. 14, Comm'r's Mot.) For the reasons below, Mr. Joseph's motion is GRANTED, and the Commissioner's motion is DENIED.

## Background

On August 6, 2019, Mr. Joseph applied for disability insurance benefits ("DIB"), alleging disability beginning May 24, 2018. (R.83.)[3] Mr. Joseph alleges his physical injuries resulted from an accident that occurred during his former employment: when he was stepping into a van with a 70-pound crate of milk, another vehicle struck the van, causing Mr. Joseph to fall and the inventory he was holding to fall on top of him. (R.288.) On the alleged onset date, Mr. Joseph was 26 years old and had at least a high school education. (R.94.)

The Commissioner denied his application for disability benefits on March 9, 2020, and denied the application again upon reconsideration on October 9, 2020. (R.83.) On February 12, 2021, Administrative Law Judge Robert R. Schriver (the "ALJ") held a telephone hearing due to the extraordinary circumstances of the COVID-19 pandemic. (*Id.*) Mr. Joseph appeared at the hearing with counsel. (*Id.*) A vocational expert also appeared. (*Id.*) Mr. Joseph provided medical evidence before and after the hearing, when the record was held open. (*Id.*)

On April 12, 2021, the ALJ decided that Mr. Joseph was not

---

[3] The Court cites to the Bates-stamped Administrative Transcript, (ECF No. 8), as (R.___.)

disabled pursuant to 42 U.S.C. § 423 and therefore did not award him DIB. (R.83, 95.) The ALJ determined that Mr. Joseph had not engaged in substantial gainful activity since he applied for DIB. (R.85.) He also determined Mr. Joseph had severe impairments of degenerative disc disease and herniated discs of the lumbar spine with nerve-root compromise; status post-lumbar laminectomy surgery; degenerative disc disease and bulging discs of the cervical spine; cervical radiculopathy; schizoaffective disorder; generalized anxiety disorder; posttraumatic stress disorder; bipolar disorder; and cannabis dependence significantly limiting him from performing basic work activities. (R.85–86.) Although the ALJ found Mr. Joseph's right shoulder impairment was not severe, he still considered it when making the residual functional capacity ("RFC") determination. (R.86, 88-93.)

The ALJ also found that Mr. Joseph lacked an impairment or combination of impairments that met or medically equaled the severity of a listed impairment in 20 C.F.R. Part 404, Subpart P, Appendix 1 that would automatically qualify him as disabled regardless of age, education, or work experience. (R.86.) The ALJ next determined that Mr. Joseph had the RFC to perform light work pursuant to 20 CFR § 404.1567(b), subject to specified limitations of: avoiding concentrated exposure to respiratory irritants; performing simple tasks only; only occasionally making work-related decisions; and having only occasional interaction with the

3

general public. (R.88.) The ALJ explained that although Mr. Joseph's impairments could reasonably be expected to cause his alleged symptoms, Mr. Joseph's "statements concerning the intensity, persistence and limiting effects of" his symptoms were "not entirely consistent with the medical evidence and other evidence in the record for the reasons explained in [the] decision." (*Id.*)

The ALJ further determined Mr. Joseph was unable to perform his past relevant work as a delivery driver or a counter attendant. (R.94.) However, considering his age, education, work experience, and RFC, the ALJ found Mr. Joseph could perform other jobs that existed in significant numbers in the national economy. (*Id.*) Specifically, the ALJ found Mr. Joseph could perform marker, router, and assembler jobs that the vocational expert testified a hypothetical person with Mr. Joseph's profile could perform. (R.95.) The ALJ concluded that because Mr. Joseph could perform such jobs, he was not disabled and thus not entitled to DIB from May 24, 2018, through the date of the decision. (*Id.*)

The Social Security Administration received Mr. Joseph's request for an appeal of the ALJ's decision on April 21, 2021. (R.11.) On June 8, 2021, the Appeals Council notified Mr. Joseph that it found no basis to change the ALJ's ruling, rendering it the Commissioner's final decision. (R.1.) On August 5, 2021, Mr. Joseph commenced this action for judicial review of the

4

Commissioner's final decision. (*See* ECF No. 1, Compl.)

## **Legal Standard**

### I.   **Standard of Review**

A claimant may seek judicial review of the Commissioner's final decision by bringing a civil action in federal district court pursuant to 42 U.S.C. § 405(g). "In reviewing a final decision of the SSA, this Court is limited to determining whether the SSA's conclusions were supported by substantial evidence in the record and were based on a correct legal standard." *Talavera v. Astrue*, 697 F.3d 145, 151 (2d Cir. 2012) (internal quotations omitted); *see Swainbank v. Astrue*, 356 F. App'x 545, 547 (2d Cir. 2009) (noting that a court "may set aside the Commissioner's decision only if the factual findings are not supported by substantial evidence or if incorrect legal standards were applied").

"'Substantial evidence is more than a mere scintilla,' and must be relevant evidence that a 'reasonable mind might accept as adequate to support a conclusion.'" *Duran v. Comm'r of Soc. Sec.*, 618 F. Supp. 3d 94, 98 (E.D.N.Y. 2022) (quoting *Halloran v. Barnhart*, 362 F.3d 28, 31 (2d Cir. 2004)). "An ALJ's finding is considered supported by substantial evidence if any reasonable factfinder could have made the same finding, even if substantial evidence also supports the claimant's position." *Benjamin v. O'Malley*, No. 21-CV-2912 (KAM), 2024 WL 1319560, at *4 (E.D.N.Y. Mar. 28, 2024). "To determine whether the findings are supported

by substantial evidence, the reviewing court is required to examine the entire record, including contradictory evidence and evidence from which conflicting inferences can be drawn." *Mongeur v. Heckler*, 722 F.2d 1033, 1038 (2d Cir. 1983).

In turn, inquiry into "legal error" involves considering whether the claimant had a "'full hearing under the [Commissioner's] regulations and in accordance with the beneficent purposes of the [Social Security] Act.'" *Duran*, 618 F. Supp. 3d at 98 (quoting *Moran v. Astrue*, 569 F.3d 108, 112 (2d Cir. 2009)). "Remand is appropriate…where the ALJ applied the wrong legal standard" and "is especially appropriate if more findings would clarify the rationale for the ALJ's decision." *Santoro v. Comm'r of Soc. Sec.*, No. 21-CV-2044 (KAM), 2023 WL 8177365, at *5 (E.D.N.Y. Nov. 27, 2023) (citing *Duran*, 618 F. Supp. 3d at 99).

## II. Determination of Disability and Entitlements

To receive DIB, a claimant must be "disabled" pursuant to the Social Security Act ("the Act"). *See* 42 U.S.C. § 423(a), (d); *see also Duran*, 618 F. Supp. 3d at 97. A claimant is "disabled" when "unable to 'engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months.'" *Duran*, 618 F. Supp. at 97 (quoting § 423(d)(1)(A)). The impairment must be of "such severity" that the claimant cannot do

6

his previous work or any other substantial gainful work existing in the national economy. *Id.* (quoting § 423(d)(2)(A)). In determining whether a claimant is entitled to benefits, the "Commissioner must consider…'(1) the objective medical facts [and clinical findings]; (2) diagnoses or medical opinions based on such facts; (3) subjective evidence of pain or disability ...; and (4) the claimant's educational background, age, and work experience.'" *Id.* (quoting *Balodis v. Leavitt*, 704 F. Supp. 2d 255, 262 (E.D.N.Y. 2010)).

Social Security Administration regulations require a "five-step analysis" for evaluating disability claims: "'(1) that the claimant is not working, (2) that he has a "severe impairment," (3) that the impairment is not one [listed in Appendix 1 of the regulations] that conclusively requires a determination of disability, and (4) that the claimant is not capable of continuing in his prior type of work, the Commissioner must find him disabled if (5) there is not another type of work the claimant can do.'" *Green-Younger v. Barnhart*, 335 F.3d 99, 106 (2d Cir. 2003) (quoting *Draegert v. Barnhart*, 311 F.3d 468, 472 (2d Cir.2002)); *see also* 20 C.F.R. § 404.1520(a)(4) (outlining the "five-step sequential evaluation process"). Claimant bears the burden of proof at steps one through four; "at step five, the burden shifts to the Commissioner." *Colgan v. Kijakazi*, 22 F.4th 353, 358 (2d Cir. 2022).

## Discussion

Mr. Joseph makes seven arguments: that the ALJ (1) erred in finding his right shoulder impairment was not severe; (2) failed to properly evaluate if Mr. Joseph met or equaled a medical listing to conclusively determine disability; (3) incorrectly assessed Mr. Joseph's impairments when making the RFC findings; (4) improperly analyzed Mr. Joseph's testimony evidence against the record; (5) failed to consider the entirety of certain findings supporting the RFC determination; (6) erred in relying on the vocational expert's testimony; and (7) failed to consider Mr. Joseph's ability to sustain work when making the RFC finding. (ECF No. 10-1, Pl. Mem. at 14-24.)

## I. Substantial Evidence Supports the ALJ's Evaluation of the Shoulder Impairment as Not Severe

Step Two of the five-step sequence requires the ALJ to evaluate "whether the claimant has a 'severe impairment' — *i.e.*, an impairment or combination of impairments that 'significantly limits' [his] 'physical or mental ability to do basic work activities' — that has lasted or is expected to last for twelve months or longer." *Prescott v. O'Malley*, No. 21-CV-441 (EK), 2024 WL 1174400, at *1 (E.D.N.Y. Mar. 19, 2024) (citing 20 C.F.R. § 404.1509, 404.1520(a)(4)(ii), (c))).

"Courts in the Second Circuit have found that '[a] finding of not severe should be made if the medical evidence establishes only

a slight abnormality which would have no more than a minimal effect on an individual's ability to work.'" *Bruno v. Colvin*, No. 13-CV-7298 (DLI), 2015 WL 4629225, at *7 (E.D.N.Y. Aug. 3, 2015) (quoting *Juarbe v. Astrue*, 2011 WL 4542964, at *6 (D. Conn. Aug. 30, 2011), report and recommendation adopted, 2011 WL 4542962 (D. Conn. Sept. 28, 2011)).

Mr. Joseph argues that the ALJ failed to accurately classify his right shoulder impairment as severe, which he argues warrants a remand. (ECF No. 10, Pl.'s Mem. 14-16.) However, substantial evidence supports the ALJ's finding that Mr. Joseph's shoulder impairment was not severe. The ALJ determined that Mr. Joseph's right shoulder impairment was not severe "because it did not last for 12 months." (R.86.) In reaching this conclusion, the ALJ considered the record, and specifically Exhibit 1F, which he found "indicate[d] that by May 2019, the claimant had full range of motion[.]" (*Id.*)

Exhibit 1F states that Mr. Joseph was initially injured on May 24, 2018, when a vehicle struck a truck that Mr. Joseph was loading, causing him to fall to the ground. (R.284.) Exhibit 1F further states that on April 18, 2019—within 12 months of Mr. Joseph's initial injury—Dr. Abiola Familusi examined Mr. Joseph for a follow up and noted that Mr. Joseph "continues to improve. His pain is now on and off. He is able to do his exercises without any problems. He still has some difficulty bending down to pick up

anything from the floor. However, the back pain is improving. It is about 3/10. No weakness of the lower extremities. No numbness or tingling sensation of the lower extremities." (R.311-313.) The report specifically notes "minimal tenderness in the shoulder area" and a plan to "[d]iscontinue physical therapy at this point" and instead continue, *inter alia*, a "home exercise program[.]" (R.312.) Exhibit 1F further states on May 15, 2019, Dr. Jeffrey Passick conducted an orthopedic re-examination of Mr. Joseph's impairments. (R.373.) Dr. Passick found no impingement, tenderness, or effusion in Mr. Joseph's right shoulder. (R.376)[4]

Although the ALJ cited only to Exhibit 1F as part of his Step Two analysis, his later analysis also considers that in a February 2020 report, Dr. Fkiaras examined Mr. Joseph and noted a somewhat decreased range of motion in the right shoulder. (R.90.) Accordingly, substantial evidence supports the ALJ's finding that Mr. Joseph's shoulder impairment was not severe because it did not last for twelve months, nor was expected to last for twelve months

---

[4] Because the ALJ does not explicitly note in this section which part of Exhibit 1F he references, it is not clear whether he considered Dr. Passick's May 2019 report in Exhibit 1F specifically for the severity analysis at Step Two. However, the ALJ later notes that Dr. Passick's May 2019 opinion is not persuasive because although the opinion was "supported by a detailed report containing his clinical findings on physical examination," he continues that "[h]is opinion that the claimant has no physical limitations at all, however, is simply inconsistent with the longitudinal medical record." (R.92.) The ALJ appears to specifically disagree with Dr. Passick's conclusion that the claimant "had 0% orthopedic disability"; was "capable of performing all the tasks of daily living and maintaining full employment without restrictions"; and had "no physical limitations at all[.]" (*Id.*) Conflicting evidence in the record is for the ALJ to resolve. *See Difiglia v. Comm'r of Soc. Sec. Admin.*, No. 22-cv-6825 (KAM), 2024 WL 1332502, at *11 (E.D.N.Y. Mar. 28, 2024) (citing *Veino v. Barnhart*, 312 F.3d 578, 588 (2d Cir. 2002)).

or longer. *See Duran*, 618 F. Supp. 3d at 98 ("Substantial evidence is more than a mere scintilla, and must be relevant evidence that a reasonable mind might accept as adequate to support a conclusion." (internal quotations omitted)); *see also Benjamin*, No. 21-CV-2912 (KAM), 2024 WL 1319560, at *4 (noting that "[a]n ALJ's finding is considered supported by substantial evidence if any reasonable factfinder could have made the same finding, even if substantial evidence also supports the claimant's position"); *Difiglia v. Comm'r of Soc. Sec. Admin.,* No. 22-CV-6825 (KAM), 2024 WL 1332502, at *6 (E.D.N.Y. Mar. 28, 2024) ("If there is substantial evidence in the record to support the Commissioner's findings as to any fact, those findings are conclusive and must be upheld.").

In turn, Mr. Joseph relies in part on medical documentation from immediately after or less than a year after his initial injury, and in part on a later report from June 2019 that does not speak clearly to his shoulder injury. (ECF No. 10-1, Pl.'s Mem. 14–16.) Mr. Joseph has not met his burden of proof at Step Two to show he has a severe shoulder injury that lasted or was expected to last for twelve months or longer. *See Difiglia,* No. 22-CV-6825 (KAM), 2024 WL 1332502, at *6 ("It is 'up to the agency,' however, and 'not this court, to weigh the conflicting evidence in the record.'" (quoting *Clark v. Comm'r of Soc. Sec.*, 143 F.3d 115, 118 (2d Cir. 1998))).

Further, even if the ALJ did incorrectly assess the right shoulder impairment as not severe, the error would not warrant remand because "when there are multiple impairments, and the ALJ finds that only some of the impairments, but not others, are severe," as the ALJ did here, "any error in the severity analysis is harmless because the ALJ continues with the with the [sic] sequential analysis, and does not deny plaintiff's application based the second step alone." *Kemp v. Comm'r of Soc. Sec.*, No. 10-CV-1244 (GLS) (ATB), 2011 WL 3876526, at *8 (N.D.N.Y. Aug. 11, 2011), report and recommendation adopted, No. 10-CV-1244 (NAM) (ATB), 2011 WL 3876419 (N.D.N.Y. Aug. 31, 2011); s*ee also Tryon v. Astrue*, No. 10-CV-537 (MAD), 2012 WL 398952, at *3 (N.D.N.Y. Feb. 7, 2012) (finding that because the ALJ proceeded with the analysis and included claimant's severe and non-severe impairments in the RFC determination, there was no basis to remand this matter based upon the ALJ's Step Two analysis.)

**II. The ALJ's Finding that Mr. Joseph's Impairments Did Not Meet or Equal the Applicable Listings was Supported by Substantial Evidence**

At Step Three, the Commissioner must decide whether any of the claimant's impairments meet or equal one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. *See* 20 C.F.R. § 404.1520(a)(4)(iii), (d); § 404.1525. A claimant must either "'meet all of the specified medical criteria [in the

listing],'" *Flores v. Comm'r of Soc. Sec.*, 644 F. Supp. 3d 53, 64 (S.D.N.Y. 2022) (quoting *Sullivan v. Zebley*, 493 U.S. 521, 530 (1990) (emphasis omitted)), or alternatively "show that his impairment is 'medically equivalent' to a Listing, meaning that it is 'at least equal in severity and duration to the criteria of any listed impairment,'" *Id.* (quoting 20 C.F.R. § 404.1526(a)).

Further, the ALJ need not "'explicitly discuss every Listing in his written opinion, and there is no error in failing to discuss a particular Listing when substantial evidence indicates a claimant did not satisfy the Listing.'" *Id.* (quoting *Jones v. Berryhill*, 415 F. Supp. 3d 401, 419 (S.D.N.Y. 2019). If the ALJ only cursorily mentions a particular Listing without providing an "express rationale," there is no error if the ALJ's determination is otherwise supported by substantial evidence in the record. *Salmini v. Commissioner of Social Security*, 371 F. App'x 109, 112 (2d Cir. 2010).

Mr. Joseph argues that the ALJ erred at Step Three in failing to analyze whether Mr. Joseph's impairments met or were medically equivalent to Listing 1.15, which lists criteria for disorders of the skeletal spine. (ECF No. 10-1, Pl.'s Mem. 17–19.) However, Listing 1.15 replaced Listing 1.04, effective April 2, 2021. *See* SSAR 15-1(4), 85 Fed. Reg. 79063 (Dec. 8, 2020). Because Mr. Joseph brought his claim before the effective date, the ALJ properly applied Listing 1.04 in his analysis. *See Riddick v. Saul*, No. 20-

cv-5396 (AMD), 2022 WL 784722, at *2 n.1 (E.D.N.Y. Mar. 15, 2022) (applying Listing 1.04 because "Listing 1.04(A) was replaced by Listing 1.15 effective April 2, 2021" and that "the plaintiff's claim was brought before [] the effective date").

The ALJ gave "[s]pecific consideration [] to listing 1.04 (disorders of the spine)." (R.86.) The ALJ found that "[t]he medical evidence of record did not document signs, symptoms, and/or laboratory findings indicating any impairment severe enough to meet the criteria of any listed impairment[.]" (*Id.*) Citing to specific portions of Exhibits 9F, 11F, and 18F, the ALJ noted that "[m]any of the neurological examinations were either normal or within normal limits[.]" (*Id.*)

The evidence the ALJ cited include reports indicating, for example, normal neurologic findings and normal examinations of the cervical spine, lumbar spine, and right shoulder (R. 659, 704, 712 803, 825.) Although the ALJ did not specifically analyze the cited portions of the record, the record indicates that substantial evidence supports his conclusion. *See Perozzi v. Berryhill*, 287 F. Supp. 3d 471, 482 (S.D.N.Y. 2018) (rejecting claimant's contention that remand is required, notwithstanding that the ALJ conducted "no analysis whatsoever of the elements of [Listing 1.04]" because "a court has the power to uphold an ALJ's conclusion at step three of the analysis in the 'absence of an express rationale...[where] portions of the ALJ's decision and the evidence before him indicate

14

that his conclusion was supported by substantial evidence'" (quoting *Berry v. Schweiker*, 675 F.2d 464, 468 (2d Cir. 1982))).

Accordingly, substantial evidence supports the ALJ's conclusion that Mr. Joseph's impairments did not meet or equal Listing 1.04.

**III. The ALJ Failed to Properly Analyze Mr. Joseph's Subjective Statements**

Mr. Joseph argues that the ALJ erred in stating that his testimony was inconsistent with the evidence of record. The Court agrees.

Social Security regulations require a two-step process for evaluating a claimant's assertions of pain and other symptoms. First, "the ALJ must decide whether the claimant suffers from a medically determinable impairment that could reasonably be expected to produce the symptoms alleged." *Genier v. Astrue*, 606 F.3d 46, 49 (2d Cir. 2010) (citing 20 C.F.R. § 404.1529(b)). "If the claimant does suffer from such an impairment, at the second step, the ALJ must consider 'the extent to which [the claimant's] symptoms can reasonably be accepted as consistent with the objective medical evidence and other evidence' of record." *Id.* (quoting 20 C.F.R. § 404.1529(a)). In doing so, the ALJ must consider certain factors "in evaluating the intensity and persistence of a claimant's" subjective symptoms. *Lao v. Colvin*, No. 14-CV-7507 (ADS), 2016 WL 2992125, at *15 (E.D.N.Y. May 23,

2016). "In this analysis, the ALJ must consider: (1) the claimant's daily activities; (2) the location, duration, frequency, and intensity of the pain; (3) precipitating and aggravating factors; (4) the type, dosage, effectiveness, and side effects of any medications taken to alleviate the pain; (5) any treatment, other than medication, that the claimant has received; (6) any other measures that the claimant employs to relieve the pain; and (7) other factors concerning the claimant's functional limitations and restrictions as a result of the pain." *Maldonado v. Comm'r of Soc. Sec.*, No. 12-CV-5297 (JO), 2014 WL 537564, at *17 (E.D.N.Y. Feb. 10, 2014) (quoting *Meadors v. Astrue*, 370 F. App'x 179, 184 n.1 (2d Cir. 2010) (citing 20 C.F.R. § 404.1529(c)(3)(i)-(vii))).

Although the ALJ is "'not require[d] to accept the claimant's subjective complaints without question,'" and the ALJ "'may exercise discretion in weighing the credibility of the claimant's testimony in light of the other evidence in the record,'" *Campbell v. Astrue*, 465 F. App'x 4, 7 (2d Cir. 2012) (internal quotation omitted) (quoting *Genier*, 606 F.3d at 49), "[w]here the ALJ fails sufficiently to explain a finding that the claimant's testimony was not entirely credible, remand is appropriate." *Valet v. Astrue*, No. 10-CV-3282 (KAM), 2012 WL 194970, at *22 (E.D.N.Y. Jan. 23, 2012). Indeed, "[t]he determination or decision must contain specific reasons for the weight given to the individual's symptoms, be consistent with and supported by the evidence, and be clearly

16

articulated so the individual and any subsequent reviewer can assess how the adjudicator evaluated the individual's symptoms." SSR 16-3P, 2017 WL 5180304 (Oct. 25, 2017); *see also Williams v. Berryhill*, No. 17-CV-1660 (JMA), 2019 WL 1271647, at *5 (E.D.N.Y. Mar. 19, 2019) (quoting similar language from SSR 96-7p, which predated SSR 16-3p). In doing so, that ALJ should "specify" "any of [claimant's] statements" that are "inconsistent with medical evidence in the record" and "explain why he chooses to discredit them with reference to the applicable factors" in 20 C.F.R §404.1529(c)(3)(i)-(vii). *Maldonado*, No. 12-CV-5297 (JO), 2014 WL 537564, at *17. Ultimately, "[w]here an ALJ rejects witness testimony as not credible, the basis for the finding 'must...be set forth with sufficient specificity to permit intelligible plenary review of the record.'" *Acevedo v. Saul*, 577 F. Supp. 3d 237, 246 (S.D.N.Y. 2021) (quoting *Williams ex rel. Williams v. Bowen*, 859 F.2d 255, 260-61 (2d Cir. 1988)).

Here, the ALJ "failed adequately to assess the credibility of [Mr. Joseph's] statements," which is cause for remand. *Valet*, No. 10-CV-3282 (KAM), 2012 WL 194970, at *21-22. First, although the ALJ addressed the first and second step of the analysis of Mr. Joseph's subjective complaints, the decision failed to specify specific statements from Mr. Joseph "concerning the intensity, persistence and limiting effects of [his] symptoms" that the ALJ determined were not "entirely consistent with the medical evidence

17

and other evidence in the record[.]" (R.88.) Indeed, although the ALJ states that he has followed the requirements of "20 CFR 404.1529 and SSR 16-3p," nowhere does the ALJ specify any of Mr. Joseph's statements of his subjective symptoms "and explain why he chooses to discredit them with reference to the applicable regulatory factors[.]" *Maldonado*, No. 12-CV-5297 (JO), 2014 WL 537564, at *17. Although the ALJ briefly discusses Mr. Joseph's "daily activities" and some of his non-medication treatment (R.91-92), he fails to discuss, for example, "the location, duration, frequency, and intensity of" Mr. Joseph's pain, although Mr. Joseph testified to it at the hearing[5]; any "precipitating and aggravating factors," though Mr. Joseph also testified to not being able to "bend down" or "stand up for a long time" and only being able to "take just a couple steps" to get the blood flowing in his legs (R.29-30); medications that the record indicates Mr. Joseph takes to "alleviate [his] pain" and their "dosage, effectiveness, and side effects"[6]; or "[o]ther factors concerning [Mr. Joseph's]

---

[5] Mr. Joseph testified that the most he can lift without feeling pain is a "can of soda" because he does not "have the strength." (R.34.) In October 2020, Dr. Joshua Auerbach recommended Mr. Joseph have surgery because he "has failed therapy and injections, and "unfortunately his pain persists despite conservative treatment." (R.795.) One month prior to Mr. Joseph's testimony, Dr. Marshall Kurtz agreed with Dr. Auerbach's 2020 assessment and noted that Mr. Joseph "has sustained a significant impact on quality of life and has exhausted all reasonable conservative treatment options." (R.825.)

[6] Mr. Joseph testified to taking "Prozac, Trazodone, Olanzapine, Naprosyn, Xanax, Buspirone, Zyprexa" and other medications such as oxycodone, muscle relaxers, and antibiotics from his spinal surgery. (R.31-32.) This testimony is supported by other medical reports in the record that list Mr. Joseph's medications. (R.765-788.)

18

functional limitations and restrictions due to pain or other symptoms," like Mr. Joseph's daily use of a cane at the time of his testimony, (R.33.); § 404.1529(c)(3)(i)-(vii).

Thus, because the ALJ insufficiently applied the factors in § 404.1529(c)(3), remand is appropriate. *See Valet*, No. 10-CV-3282 (KAM), 2012 WL 194970, at *22; *see also Cabibi v. Colvin*, 50 F. Supp. 3d 213, 237 (E.D.N.Y. 2014) (finding improper analysis of factors in § 404.1529(c)(3)(i)-(vii) a "serious flaw in [ALJ's] credibility determination"); *Kane v. Astrue*, 942 F. Supp. 2d 301, 314 (E.D.N.Y. 2013) (finding "ALJ's credibility analysis was insufficient" where "ALJ did not explicitly refer to or discuss any of the factors listed in 20 C.F.R. 404.1529(c)(3)" and collecting cases); *Pereyra v. Astrue*, No. 10-CV-5873 (DLI), 2012 WL 3746200, at *15 (E.D.N.Y. Aug. 28, 2012) (noting that where "the ALJ neglects to discuss at length his credibility determination to the extent the reviewing court cannot decide whether there are legitimate reasons for the ALJ's disbelief and whether his decision is supported by substantial evidence, remand is appropriate" and remanding where the ALJ failed "to discuss the intensity, duration, and frequency of [claimant's] pain" or "address other methods Plaintiff employed to relieve her pain," specifically the use of, *inter alia*, a cane).

Indeed, the ALJ's decision offers boiler-plate language as to the assessment of Mr. Joseph's subjective symptoms, then reviews

19

Mr. Joseph's medical history and various parts of the medical record. The failure to properly consider the credibility factors is erroneous. Here, as in *Williams v. Berryhill*, the ALJ's "initial credibility determination [] prevent[ed] meaningful judicial review" where the ALJ

> used the boilerplate language that Plaintiff's 'medically determinable impairments could reasonably be expected to cause the alleged symptoms; [but his] statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record *for the reasons explained in this decision*.' However, [the] ALJ [] then failed to explain how Plaintiff's statements were incredible—he merely recited Plaintiff's medical history and pointed to a few limited activities Plaintiff indicated he could perform in support of the RFC determination. That falls short of a proper credibility analysis in accordance with the Commissioner's regulations and case law.

No. 17-CV-1660 (JMA), 2019 WL 1271647, at *5 (internal citation omitted) (emphasis in original).

Here, the ALJ's decision, including the boiler-plate language followed by a recitation of Mr. Josephs' medical history, mirrors the error in *Williams*. That the ALJ here offered a significant summary of the medical records is not a substitute for properly assessing Mr. Joseph's subjective symptoms. *See Smith v. O'Malley*, No. 23-CV-02339 (JLC), 2024 WL 1983881, at *13 (S.D.N.Y. May 6, 2024) (finding that the ALJ used the same boiler-plate language as in *Williams v. Berryhill* and that, "as in *Williams*, the ALJ merely recited Smith's medical history, which falls 'short of a proper

credibility analysis in accordance with the Commissioner's regulations and case law'" (quoting *Williams*, No. 17-CV-1660 (JMA), 2019 WL 1271647, at *5)).

Accordingly, because the ALJ "failed adequately to assess the credibility of [Mr. Joseph's] statements," remand is appropriate. *Valet*, No. 10-CV-3282 (KAM), 2012 WL 194970, at *21-22.

**IV. Mr. Joseph's Remaining Arguments**

Mr. Joseph's remaining arguments amount to: (1) arguing that the ALJ erred in not considering the entirety of two consultative examination reports—one from Dr. Fkiara and one from Dr. Fujiwaki—when determining the RFC, thus warranting remand, (ECF No. 10-1, Pl. Mem. at 22); (2) arguing that the ALJ failed to sufficiently consider Mr. Joseph's limitations when making the RFC finding of Light Work, (*Id.* at 19); (3) arguing that the hypothetical questions the ALJ asked the vocational expert did not fully reflect all Mr. Joseph's limitations, and thus the testimony is inadequate to support the ALJ's conclusions, (*Id.* at 23); and (4) appearing to argue that the ALJ erred by failing to sufficiently focus on Mr. Joseph's ability to sustain work activities, (*Id.*).

To the extent Mr. Joseph argues that the ALJ erred in not considering the entirety of two consultative examination reports—one from Dr. Fkiara and one from Dr. Fujiwaki—when determining the RFC, the argument is without merit. And as noted above, the ALJ need not "mention[] every item of testimony presented to him or

have explained why he considered particular evidence unpersuasive or insufficient to lead him to a conclusion of disability[.]" *Campbell*, 465 F. App'x at 6; *see also My-Lein L. v. Comm'r of Soc. Sec.,* 551 F. Supp. 3d 100, 104 (W.D.N.Y. 2021) ("It is well settled that the ALJ is not required to formulate the RFC by adopting any one medical opinion in its entirety.").

Mr. Joseph's remaining arguments are that remand is appropriate because the ALJ failed to sufficiently consider Mr. Joseph's limitations when making the RFC finding of Light Work; because the hypothetical questions the ALJ asked the vocational expert did not fully reflect all Mr. Joseph's limitations; and because the ALJ erred by failing to sufficiently focus on Mr. Joseph's ability to sustain work activities. Because the Court concludes that the ALJ did not properly evaluate Mr. Joseph's subjective symptoms, and therefore it cannot "subject his RFC determination to meaningful review," the Court directs the consideration of these arguments on remand. *Meadors*, 370 F. App'x at 183, 185 ("Because…the ALJ did not properly evaluate the Appellant's testimony regarding her pain, we are unable to give his calculation of Appellant's RFC meaningful review. On remand the ALJ must consider Appellant's subjective complaints of pain under the proper standard and calculate her RFC accordingly.").

## Conclusion

For the foregoing reasons, Mr. Joseph's motion for judgment

on the pleadings is GRANTED, the Commissioner's motion is DENIED, and this case is remanded for further proceedings consistent with this Memorandum and Order. The Clerk of Court is respectfully directed to enter judgment in favor of Mr. Joseph and close this case.

**SO ORDERED.**

Dated:   July 24, 2024
         Brooklyn, New York

_____
KIYO A. MATSUMOTO
United States District Judge
Eastern District of New York